UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

AMTEC INTERNATIONAL OF NY CORP.,

                              Plaintiff,

            v.

POLISH FOLKLORE IMPORT CO., INC.,

                              Defendant.

**MEMORANDUM AND ORDER**

20-CV-3 (LDH) (PK)

---

LaShann DeArcy Hall, United States District Judge:

      Amtec International of N.Y. Corp. ("Plaintiff") brings this action against Polish Folklore Import Co., Inc. ("Defendant"), asserting violations of New York's Alcoholic Beverage Control Law § 55-c and New Jersey's Malt Alcoholic Beverages Practices Act. Defendant moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiff's amended complaint in its entirety.

## BACKGROUND[1]

      Plaintiff is a multi-brand distributor and importer of alcoholic and beverage products. (Am. Compl. ¶ 2, ECF No. 17.) On or about January 11, 1998, Plaintiff entered into an Import and Wholesale Agreement (the "1998 Agreement") with Browar Dojlidy ("Dojlidy"), pursuant to which it became the exclusive importer of Dojlidy's "Zubr" product ("Zubr") in New York, Connecticut, and New Jersey. (*Id.* ¶ 8.) Between February and March 1998, Plaintiff was registered as the exclusive distributor for Zubr in New Jersey, Connecticut, and New York, and thereafter commenced exclusive distribution of Zubr in those states. (*Id.* ¶¶ 10–13.) Two years

---

[1] The following facts taken from the amended complaint (ECF No. 17) are assumed to be true for the purpose of this memorandum. For a more detailed recitation of the background of this case, *see Amtec International of NY Corp. v. Polish Folklore Import Co.*, No. 20-cv-0003, 2022 WL 992565, at *1–2 (E.D.N.Y., Mar. 31, 2022).

later, on December 31, 2000, Dojlidy and Plaintiff renewed the distribution agreement (the "2000 Agreement"), which extended Plaintiff's exclusive right to distribute Zubr. (*Id.* ¶ 14.)

On February 4, 2003, Kompania Piwoarska ("KP") purchased the Dojlidy Brewery and acquired the rights to manufacture Zubr. (*Id.* ¶ 6.) KP reappointed Plaintiff to distribute Zubr in New York, New Jersey, and Connecticut, and Plaintiff continued to do so until at least September 2003. (*Id.* ¶¶ 17, 19.) KP ultimately withdrew Zubr from the United States market in August 2005. (*Id.* ¶ 21.) However, it never rescinded Plaintiff's exclusive distribution rights. (*Id.* ¶ 22.)

In April 2018, Defendant, an "importer of various brands of beer manufactured by [KP]," submitted an Application for Certificate of Label Approval to the U.S. Department of Treasury, Alcohol and Tobacco Tax and Trade Bureau in anticipation of reintroducing Zubr to the United States market. (*Id.* ¶¶ 4, 25.) Defendant subsequently attempted to terminate Plaintiff's exclusive distribution rights for Zubr in Connecticut, but was foreclosed from this effort by Connecticut's Department of Consumer Protection. (*Id.* ¶¶ 26–27.) Undeterred, Defendant proceeded to appoint two new exclusive distributors for Zubr in New York and New Jersey. (*Id.* ¶ 28.) Defendant failed to provide Plaintiff with any formal notice of termination in either jurisdiction. (*Id.* ¶ 29.)

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct. *Id.* While this

standard requires more than a "sheer possibility" of a defendant's liability, *id.*, "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss, *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999).  Instead, "the Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true." *Id.* (citations omitted).

## DISCUSSION

As with the original complaint in this matter, Plaintiff's amended claims arise under New York's Alcoholic Beverages Control Law ("ABC") and New Jersey's Malt Alcoholic Beverages Practices Act ("MABPA"), each of which regulate the relationships between brewers, distributors, and local retailers of alcohol and beverage products. *See Amtec Int'l of N.Y. Corp. v. Polish Folklore Import Co.*, No. 20-CV-0003, 2022 WL 992565, at *3 (E.D.N.Y., Mar. 31, 2022) ("*Amtec I*").  In addressing Plaintiff's original complaint, the Court determined that Plaintiff failed to plead adequately that Defendant was subject to ABC or MABPA. *Id.* at *6. Specifically, the Court explained that a brewer falls outside of the reach of ABC unless it "sells or offers to sell beer" to a wholesaler in the state of the New York. *Id.*  Likewise, MABPA only extends to the supply, distribution, or sale of products that occur within New Jersey. *Id.* Because the Court found that Plaintiff failed to plead a sale by Defendant in either New York or New Jersey, Plaintiff necessarily failed to state a claim under either ABC or MABPA. *Id.* at *5–6.  Defendant, in its renewed motion to dismiss, maintains that the amended complaint suffers from the same deficiencies fatal to the original complaint, and should be dismissed accordingly. (Def.'s Mot. to Dismiss ("Def.'s Mot.") at 5, ECF No. 22.).  The Court agrees.

Most of the allegations pleaded in the original complaint remain unchanged here. That said, Plaintiff's opposition helpfully identifies the material changes in the amended complaint as follows:

> (1) PFI sells and offers to sell Zubr Brand products to duly licenses distributors in the States of New York and New Jersey, with the sales actually taking place in New York and New Jersey.
>
> (2) In fact, PFI's sale of Zubr Brand product in New York and New Jersey constituted the de facto termination of Amtec's distribution rights.
>
> (3) [Dojlidy] expressly appointed Amtec as distributor to sell [Dojlidy] products in the State of New York and New Jersey. Moreover, the 2000 Agreement also provides that "the Distributor is willing to purchase the Products for the purposes of distributing the same within the Territory.
>
> (4) Additionally, the 2000 Agreement also provides the following:
>
>> "Distributor undertakes to purchase Products and distribute the same, at its own risk and expense, within the Territory – subject to the provisions stipulated herein"; (ii) "Manufacturer hereby grants Distributor the right to use trademarks used in the designations of the Products, within the Territory and for duration of the terms of this Contract, for purposes related to the export and sales of Products and any related marketing activities"; and (iii) "Manufacturer undertakes to name the Distributor as the sole supplier of the Products within the Territory to any new customers."

(Plaintiff's Opp'n, to Def.'s Mot. ("Pl.'s Opp'n") at 7–8, ECF No. 22-1) (citations omitted.) As Plaintiff sees it, these new allegations are sufficient to overcome the complaint's prior deficiencies. Plaintiff is wrong.

In granting Defendant's motion to dismiss the original complaint, the Court relied heavily on the reasoning set forth in *S.K.I. Beer Corp. v. Baltika Brewery*, 443 F. Supp. 2d 313 (E.D.N.Y. 2006), *aff'd*, 612 F.3d 705 (2d Cir. 2010). That case considered the very question at issue here: "whether any transaction anywhere in the world with a licensed New York wholesaler is covered by [ABC], or whether it pertains only to those transactions where the sale or the offer

4

are made in New York." *Id*. at 319.  While the court in *S.K.I. Beer Corp.* acknowledged that the statute could reasonably be interpreted to mean the former, it ultimately held that the statute, when viewed holistically, "compels the conclusion that it regulates only those sales and deliveries which take place in the State of New York." *Id*. at 318, 322.  The court keenly noted that certain ambiguities were "clarified by the purpose of the statute, which provides for regulation of '*the sale and delivery* of beer by brewers'" as a matter of state policy.  *Id.* at 319 (emphasis in original).  And, more to the point, the court found that ABC is "instinct with the purpose of regulating the sale and delivery in [the state of New York] of alcoholic beverages." *Id.* (citing ABC § 2).

Here, according to the 2000 Agreement, the "delivery of the Products and acceptance thereof by the Distributor [occurred] at the Manufacturer's [] warehouse," and payment for the products was "effected by depositing [the purchase price] . . . to the Manufacturer's bank account," both of which were situated in Poland.  (*See* Ex. 2 at 2–3, Def.'s Mot.)  In other words, the sale and delivery of the product at issue, Zubr, took place outside of New York and New Jersey.

In addition, and as the Court previously found, Plaintiff's effort to prosecute Defendant for violations of ABC and MABPA runs afoul of the dormant Commerce Clause.  *See Amtec I*, 2022 WL 992565, at *6.  Here again, *S.K.I. Beer Corp.* proves instructive.  As that court explained, "[t]he Commerce Clause . . . precludes the application of a state statute to commerce that takes place wholly outside of the State's borders whether or not the commerce has effects within the state."  *S.K.I. Beer Corp.*, 443 Supp. 2d at 319–320 (quoting *Healy v. Beer Inst.,* 491 U.S. 324, 336 (1989)).  Therefore, for the same reason Plaintiff's claim fails under a reading of the statute, it fails under the United States Constitution:  The transaction for the sale of the

product between Plaintiff and Defendant was wholly exterritorial to both New York and New Jersey. That, as Plaintiff argues, "the 2000 Agreement makes clear that the final destination of the Zubr Brand products was New York and New Jersey," is of no consequence. (Pl.'s Opp'n at 9.) Put differently, the dormant Commerce Clause operates to preclude a state from regulating wholly extraterritorial commerce, even where the commerce may have effects within the state. Likewise, Plaintiff's allegations that Defendant sold or offered to sell to other duly licensed distributors, "with such sales actually taking place in New York and New Jersey," does not overcome the Commerce Clause's prohibitions.[2] (Am. Compl. ¶ 5.) Under Plaintiff's current argument, a state would be permitted to regulate wholly extraterritorial commerce between a brewer and distributor so long as that brewer conducts any commerce within the state, however tangential. Such a finding cannot be read consistent with the Commerce Clause; rather it would do violence to it.[3]

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED in its entirety.

SO ORDERED.

Dated:   Brooklyn, New York         /s/ LDH
         March 31, 2023             LaSHANN DeARCY HALL
                                    United States District Judge

---

[2] In so arguing, Plaintiff highlights that this Court's prior decision did not expressly "require that [the] Zubr product be sold, or title transferred to Amtec in the States of New York or New Jersey." (Pl.'s Opp'n at 7.) True, it was not stated expressly. So, to remove all doubt, and for the reasons set forth above, it does.

[3] The Court rejects Plaintiff's argument that because Plaintiff was the intended New York distributor appointed by Defendant, failing to apply ABC would "create an absurd result that was clearly not intended by the legislatures of each state." (Pl.'s Opp'n at 9.) In support of this proposition, Plaintiff cites *John G. Ryan, Inc. v. Molson USA, LLC*, No. 05-CV-3984, 2005 WL 2977767 (E.D.N.Y. Nov. 7, 2005). However, *Molson* held that the New York ABC's anti-arbitration clause was preempted by the Federal Arbitration Act, noting that the Twenty-first Amendment, though allowing states to regulate sale of alcohol, does not "repeal the Commerce Clause wherever regulation of intoxicating liquors is concerned[.]" *Molson*, 2005 WL 297767 at *6 (quoting *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 412-13 (1984)). *Molson* offers no support for Plaintiff's position.